## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JERRY Y. WATSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-08-341-D** |
| | ) | |
| **FRED FIGUEROA,** | ) | |
| | ) | |
| **Respondent** | ) | |

## REPORT AND RECOMMENDATION

Petitioner, a Colorado state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. Pursuant to an order of United States District Judge Timothy D. DeGiusti, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Pursuant to Rule 4 of the Rules Governing Section 2254 Cases, the petition has been promptly examined, and it is recommended that it be transferred to the United States District Court for the District of Colorado.

By this action, Petitioner challenges two convictions for aggravated robbery pursuant to a guilty plea, for which he received a sentence of ten years imprisonment on each conviction. Petition, p. 2.[1]  Denver County District Court, Case Nos. 96-CR-1525 and 96-CR-1526. Petitioner states that he was convicted on April 17, 1996, and sentenced on July 2, 1996. Id.  Petitioner apparently did not appeal, but filed an application for state post-

---

[1]Citations are to the form habeas petition, and the first page of the form petition is numbered "2" due to cover material that is omitted by the prisoner upon filing.

conviction relief on August 16, 2005, which was denied as time barred on January 6, 2006. Petition, p. 3-4.  He appealed this denial, and the Colorado Court of Appeals affirmed on April 5, 2007.  Colorado Court of Appeals, Case No. 06-CA-1223.  Petitioner states that he filed a petition for rehearing on April 17, 2007, but the mandate was issued.  Id. at 5.

Petitioner raises four grounds in support of his petition.  In Ground One, he claims he had a "justifiable excuse" to "waive" the time bar due to the fact that he was incarcerated in Missouri following his conviction, and did not return to the State of Colorado until after the three year limitation period had expired.  Petition, p. 6 and Ex. A.  He claims that he did not have access to the Colorado legal materials necessary to pursue his claims while incarcerated in Missouri.  Petition, Ex. A.  In Ground Two, Petitioner claims that the State failed to advise him that his sentences could run consecutively to his Missouri sentence.  Petition, p. 7.  In Ground Three, he claims breach of his plea agreement in that he was not advised of all possible consequences of his plea, in particular, that he was sentenced under terms that he did not agree upon or of which he was aware.  Petition, p. 9.  Finally, in Ground Four, Petitioner claims ineffective assistance of counsel for counsel's failure to advise him regarding the possibility of consecutive sentences.  Petition, p. 11.

Petitioner alleges that he is currently confined at the North Fork Correctional Facility, a private prison facility which is located within the Western District of Oklahoma. Presumably, Petitioner remains in the custody of the state of Colorado and is only being held in a private prison facility in Oklahoma pursuant to a contract between Colorado and the facility.

2

Historically, when faced with such a situation, it has been the practice of this Court to transfer the case to the district court in which the custodian with legal control in the state of conviction was located, applying the United States Supreme Court decision in Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 499  n.15 (1973).  In Braden, the Court allowed the petitioner, who was then incarcerated in an Alabama prison, to challenge a Kentucky detainer in a Kentucky federal court, because the Alabama warden was not "the person who [held] him in what [was] alleged to be unlawful custody." Id. at 494-95.  After noting the more expansive definition of the "custody"requirement that had developed in the years leading up to that decision, including that of allowing a state prisoner to attack a detainer lodged against him while still serving another sentence, the Supreme Court stated:

> In such a case, the State holding the prisoner in immediate confinement acts as agent for the demanding State and the custodian State is presumably indifferent to the resolution of the prisoner's attack on the detainer. Here, for example, the petitioner is confined in Alabama, but his dispute is with the Commonwealth of Kentucky, not the State of Alabama. Under these circumstances it would serve no useful purpose to ... require that the action be brought in Alabama. In fact, a slavish application of the rule would jar with the very purpose underlying the addition of the phrase, 'within their respective jurisdictions.' We cannot assume that Congress intended to require the Commonwealth of Kentucky to defend its action in a distant State and to preclude the resolution of the dispute by a federal judge familiar with the laws and practices of Kentucky.
>
> In view of these developments ... we can no longer view [our prior decision] as establishing an inflexible jurisdictional rule, dictating the choice of an inconvenient forum even in a class of cases which could not have been foreseen at the time of our decision.

Braden, 410 U.S. at 498-500 (citations omitted) (referring to former decision in Ahrens v. Clark, 335 U.S. 188 (1948), which was overruled by Braden).

When states transfer their convicted inmates to private prisons in Oklahoma - in order for those prisons to provide incarceration services under contract – the situation is very similar in effect to the detainer situation in <u>Braden</u>.  The custodian is clearly acting as agent for the state of conviction just as he would in the detainer situation, and is presumably indifferent to the outcome of the attack on the out of state conviction.  Accordingly, this Court has applied the reasoning in <u>Braden</u> to this arguably new class of cases.  <u>See e.g.</u> <u>Pazo-More v. Hudson</u>, No. CIV-99-778-T, Report & Rec. at 2-4 (W.D. Okla. June 28, 1999) (Roberts, M.J.), <u>adopted</u> (Aug. 10, 1999) (Thompson, J.).  The Tenth Circuit Court of Appeals did have the opportunity to review at least one such transfer, and affirmed in an unpublished decision:

> Petitioner is currently incarcerated at the [North Fork] Correctional Facility, a private prison in Sayre, Oklahoma. All of his habeas corpus claims relate to convictions imposed in 1997 by a state court in Dane County, Wisconsin. Taking into account the factors governing venue in federal courts, as set forth in 28 U.S.C. § 1404(a), the district court transferred petitioner's case to the Western District of Wisconsin because petitioner bases his claims on conduct and procedures in the state in which his criminal conviction was imposed, not the state in which he was incarcerated. We agree that this transfer of venue is proper.

<u>Skamfer v. Hudson</u>, No. 98-6386, 1999 WL 79403, *1 (10th Cir. Feb. 19, 1999).[2]

Although the Court's need to address the issue was lessened for several years due to an apparent absence of any significant out-of-state, private prison population, an influx of such prisoners combined with an intervening United States Supreme Court decision has now served to re-open the debate regarding the custodian/transfer issue.

---

[2]This and any other unpublished disposition are cited for persuasive authority pursuant to Tenth Circuit Rule 32.1.

In <u>Rumsfeld v. Padilla</u>, 542 U.S. 426 (2004), the United States Supreme Court was faced with the question of who the proper respondent was in a § 2241 habeas action brought by a federal enemy combatant. Padilla was detained in Chicago on a material witness warrant issued by the United States District Court for the Southern District of New York, designated as an "enemy combatant" by the President, and finally transported and detained in a naval brig in South Carolina at the time of filing his § 2241 petition in the United States District Court for the Southern District of New York. 542 U.S. at 430-32. Padilla had not even been indicted, let alone convicted, by a state or federal court; thus, he could not file for relief under §§ 2254 or 2255, which have judgment or sentence prerequisites – forcing him to file under § 2241(c)(3), which has neither. <u>Compare</u> 28 U.S.C.§ 2254(a) ("... in custody pursuant to the judgment of a State court ...."), <u>and</u> 28 U.S.C. § 2255 ("... in custody under sentence of a [federal] court ...."), <u>with</u> 28 U.S.C. § 2241(c)(3) ("... in custody in violation of the Constitution or laws or treaties of the United States;").

<u>Padilla</u> involved two issues: (1) whether the "immediate custodian rule" applied to an enemy combatant incarcerated in a South Carolina naval brig at the time of filing; and (2) whether the Southern District of New York, where Padilla had filed his § 2241 action, had personal jurisdiction over the South Carolina respondent by exercising its long-arm jurisdiction. <u>See</u> <u>Padilla</u>, 542 U.S. at 434. The <u>Padilla</u> Court's answer to the first question was in the affirmative: the general immediate custodian rule did apply to enemy combatant petitioners who file § 2241 cases. In answering this question, the Court acknowledged that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]."

5

<u>Padilla</u>, 542 U.S. at 434 (citing 28 U.S.C. §§ 2242 & 2243). The Court then described the longstanding "immediate custodian" rule that applied to the typical habeas petition, which "'contemplate[s] a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary.'" <u>Id.</u> at 435 (quoting <u>Wales v. Whitney</u>, 114 U.S. 564, 574 (1885)). Accordingly, the Court held that: "in habeas challenges to present physical confinement - 'core challenges' - the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." <u>Id.</u> (emphasis added). Applying this rule, the Court found that the "warden" of the naval brig where Padilla was physically confined was the custodian and thus the proper respondent. <u>Id.</u> at 442.

In reaching its decision, the <u>Padilla</u> Court distinguished the "present" aspect of the "physical confinement" that Padilla was challenging with the "future" confinement faced by the habeas petitioner in <u>Braden</u>. <u>See id.</u> at 436, 438 (emphasis added). Thus, although the <u>Padilla</u> Court reaffirmed the <u>Braden</u> rule that "a habeas petitioner who challenges a form of 'custody' other than present physical confinement may name as respondent the entity or person who exercises *legal control* with respect to the challenged 'custody,'" it concluded that the <u>Braden</u> rule did not apply for Padilla because "nothing in <u>Braden</u> supports departing from the immediate custodian rule in the *traditional context* of challenges to present physical confinement." <u>Id.</u> at 438 (emphasis added). The immediate custodian rule did not apply in

<u>Braden</u>, the <u>Padilla</u> Court pointed out, "because there was no immediate physical custodian with respect to the 'custody' being challenged." <u>Id.</u> at 439.

Since <u>Padilla</u>, courts have struggled somewhat with the rather sweeping language the Court used to resolve the rather narrow issue presented in that case. Of course, the clarification did settle things for the § 2241 federal petitioner, and left intact the <u>Braden</u> rule with regard to state habeas challenges to future custody. However, <u>Padilla</u>'s references to "core challenges" and the "traditional context of challenges to physical confinement," combined with its description of the <u>Braden</u> exception as one based upon the immediate custodian's lack of "legal control," has left it unclear in what situations a custodian other than the immediate custodian might be a proper respondent in a state-prisoner habeas action attacking the current conviction.

This issue was squarely addressed by the United States District Court for the District of South Carolina in <u>Carballo v. LaManna</u>, No. 8:05-3276-GRA-BHH, 2006 WL 3230761 (D. So. Carolina Nov. 6, 2006). Although <u>Carballo</u> was a parole challenge, and thus lodged under § 2241, it was brought by a state rather than a federal prisoner. In <u>Carballo</u>, the state prisoner petitioner had been convicted and sentenced in Dade County, Florida, but due to damage and destruction to Florida prisons following several hurricanes, was transferred to the Federal Correctional Institution in Edgefield, South Carolina. <u>Id.</u> at *1. The Federal Bureau of Prisons was merely holding the petitioner under contract with the State of Florida, and he at all times "remained a Florida state prisoner." <u>Id.</u> The petitioner then brought a petition challenging an adverse parole decision by the State of Florida, seeking his immediate release.

7

Id. at *2. After the magistrate judge recommended denying the respondent's motion to dismiss

and alternative motion to transfer, the district court held as follows:

> The magistrate judge largely based this recommendation on the United States Supreme Court decision in Rumsfeld v. Padilla, 542 U.S. 426 (2004). Rumsfeld clearly establishes "the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." Id. at 443 (emphasis added). However, this Court disagrees with the magistrate judge's recommendation that this "bright-line rule" is applicable to the present facts.

> In Rumsfeld, the respondent detainee was in custody as a suspected terrorist and "enemy combatant." Id. at 430. The President ordered the Secretary of State, Rumsfeld, to move the detainee from federal custody in New York to military custody in North Charleston, South Carolina. Id. at 431. The detainee sought habeas relief in New York where he was originally detained. Id. at 432. The Supreme Court held the detainee should have filed his petition in South Carolina, where he was currently being held and where his immediate custodian was located. Id. at 451. At all times, the detainee was in federal custody for alleged violations of federal law. In adhering to the general rule that the proper respondent in a habeas petition is the warden of the facility where the prisoner is being held, the Supreme Court noted that, in this particular case, the "detention [was] not unique in any way that would provide arguable basis for a departure from the immediate custodian rule." Rumsfeld, 542 U.S. at 442.

> When comparing the facts of Rumsfeld to the facts in the present case, this Court is of the opinion that the facts in the present case are so unique as to justify a departure from the general rule. See id. Though petitioner in this case is detained in a federal prison, he was never convicted in a federal court or sentenced to federal charges. The sole connection the petitioner has with this Court is that he is incarcerated at FCI Edgefield under 18 U.S.C. § 5003. Therefore, the general rule in Rumsfeld that jurisdiction can only be proper in this Court is not applicable in a situation such as this one. The uniqueness of this situation provides a substantial basis for departing from the immediate custodian rule.  Id.

Although Caraballo is distinguishable in the sense that the Caraballo questioned whether it

even had jurisdiction over the issue presented, the court had absolutely no difficulty

recognizing that when a state habeas petitioner has been moved from the state of conviction, the traditional situation is not at play – and thus application of the general rule for core cases referenced in <u>Padilla</u> is inappropriate. Following <u>Padilla</u>, courts have continued to consider districts to have jurisdiction over the respondent with legal control, although sometimes without analysis, or even citation to <u>Padilla</u>. For example:

> It appears that the petitioner in this case was transferred twice while his appeal was pending, first from the Green Bay Correctional Institution to the Oshkosh Correctional Institution in Wisconsin, and then to the Stateville Correctional Center in Illinois, where he is currently incarcerated. ... While the failure of counsel to follow [Rule 23] complicated matters and added work for the court, we find these errors harmless *because Dalton was in the custody of Illinois for his convictions in Illinois* while serving his concurrent term for his convictions in Wisconsin and therefore *the Illinois Attorney General was always one of the proper respondents in this action.* <u>See Braden v. 30th Judicial Circuit Court</u>, 410 U.S. 484, 498-99 (1973).

<u>Dalton v. Battaglia</u>, 402 F.3d 729, n. [1]. (7th Cir. 2005) (emphasis added); <u>Warren v. Williamson</u>, No. 3:07-CV-01717, 2007 WL 4898264, *2 (M.D. Pa. Nov. 29, 2007) ("With respect to the instant action, the petitioner is challenging his conviction in the District of Columbia Superior Court, which is in the jurisdiction of the United States District Court for the District of Columbia. All records of conviction, transcripts of proceedings, witnesses, and counsel are located within that District. Therefore, for the convenience of the parties and in the interest of justice, the instant action should be transferred to the United States District Court for the District of Columbia"); <u>Bender v. Ohio</u>, No. 07-41-HRW, 2007 WL 2363151 (E.D. Ky. Aug. 16, 2007) ("Here, venue is appropriate either in Ohio, where Petitioner was sentenced and convicted, or in Kentucky, where Petitioner is currently detained. However, the

convenience of the parties and the witnesses, and the interest of justice, would best be served

by transferring this case to the United States District Court for the Northern District of Ohio").

In a case from the United States District Court for the Middle District of Alabama, the

Petitioner – who had been convicted in Alabama, but was serving his sentence in a

correctional facility in the Eastern District of Washington – sought transfer of his case after

Padilla was decided.  Williams v. Miller-Stout, No. 2:05-CV-864-ID, 2006 WL 3147667

(M.D. Ala. Nov. 2, 2006) (Walker, M.J.). Petitioner had named both the Alabama Board of

Pardon and Paroles, and the Superintendent of the correctional facility where he was

incarcerated.  Id.  In denying the motion, the Court stated:

> While Superintendent Miller-Stout cannot necessarily be said to be indifferent
> to the resolution of Petitioner's challenge, only in the most formal sense does
> she control whether he is released. Rather, just as Kentucky controlled the
> duration of confinement in Braden and Alabama merely acted as Kentucky's
> agent, so does the Alabama Board of Pardons and Parole directly control
> whether Petitioner remains in custody. The Court's decision in Padilla does not
> alter this determination.

Williams, 2006 WL 3147667, at *1.

Finally, in their treatise on habeas corpus law, Randy Hertz and James Leibman

question whether there was even majority agreement on the Court in Padilla with regard to

whether a bright line rule for jurisdiction-venue of federal prisoner habeas petitions exists at

all. Hertz and Leibman first noted that Braden was a rejection of the notion that § 2241(a)

establishes "an inflexible jurisdictional rule,"opting instead for an analysis guided by

"traditional principles of venue."  Randy Hertz & James S. Leibman, Federal Habeas Corpus

Practice and Procedure § 10.2 (5th ed. 2005).  When Chief Justice Rehnquist, writing for the

10

majority, stated that the holding in <u>Padilla</u> stemmed from the conclusion that in habeas challenges to present physical confinement, the district of confinement is synonymous with the district court that has territorial jurisdiction over the proper respondent, four dissenting members of the Court criticized the bright line approach.  <u>Id.</u>  They instead characterized the jurisdiction-venue rule as a "workable general rule that frequently gives way ...."<u>Id.</u> (citing <u>Padilla,</u> 124 S.Ct. at 2732 (Stevens, J. dissenting)).  Moreover, Hertz and Leibman state "two of the members of the 5-Justice majority – Justices Kennedy and O'Connor – appeared to part way with the rest of the majority on this point.  In a concurring opinion by Justice Kennedy, joined by Justice O'Connor, these two Justices described the 'forum-location rules for habeas petitions' as 'subject to exceptions.'"  <u>Id.</u>  None of the exceptions applied to Padilla's case, and so it was unnecessary to decide whether the rules should "function more like rules of personal jurisdiction or rules of venue."  <u>Id.</u> (citing <u>Padilla,</u> 124 S.Ct. at 2728 (Kennedy, J., concurring, joined by O'Connor, J.)).

Applying <u>Padilla</u> and its progeny to the facts of this case, in light of the previous well-established jurisprudence regarding transfers of habeas challenges brought in districts other than the district of conviction, the undersigned concludes that transfer in this case is appropriate.  Although there is an *immediate physical* custodian, Warden Figueroa, this is not the *traditional context* of challenges to physical confinement: just as in <u>Braden</u>, there is another respondent who exercises *legal control* with respect to the challenged custody – The State of Colorado. Petitioner is for all intents and purposes a boarder at the North Fork Correctional Facility, and his custody at that institution is controlled by Warden Figueroa only

insofar as he is directed by the State of Colorado.  In concluding that both this Court and the United States District Court for the District of Colorado would have jurisdiction over Petitioner's § 2254 habeas action,  the Court retains the power under 28 U.S.C. 1404(a) to transfer the action to the other district where it may have been brought.  Braden, 410 U.S. at 499 n. 15.[3]

In reaching this recommendation, the undersigned recognizes that the United States District Court of New Mexico has come to the opposite conclusion regarding the viability of the dual or concurrent jurisdiction concept in state prisoner habeas cases following Padilla. Hickam v. Janecka, No. CIV 06-1132 JBRLP, 2007 WL 2219417, *6 (D.N.M. May 7, 2007). In Hickam, the petitioner was incarcerated in New Mexico, serving a life sentence for crimes he committed in Colorado, and brought a § 2254 petition challenging a determination the Colorado Parole Board made that allegedly lengthened his sentence.  Id. at *1.  The respondents filed a motion to transfer the action to the District of Colorado.  The district court analyzed the pre-Padilla case law, as well as Padilla and Braden, and decided that habeas jurisdiction was limited exclusively to the district of confinement:

> Given the strength and breath of the Supreme Court's language in Rumsfeld v. Padilla and the District of Columbia and Tenth Circuits' rulings in Stokes v. United States Parole Commission and McBee v. Lewis, respectively, the Court believes that the holding in Braden v. 30th Judicial Circuit Court of Kentucky has been limited and that the immediate custodian rule determines the proper

---

[3]Of the 65 correctional centers CCA operates, 41 are company-owned, with a total capacity of more than 75,000 beds in 19 states and the District of Columbia.  CCA manages more than 9,100 inmates who are housed outside their home state through partnerships with Alaska, Arizona, California, Colorado, Hawaii, Idaho, Vermont, Washington and Wyoming.   CCA Source - Client Newsletter, <http://www.ccasource.com/story.cfm?id=470> Corrections Without Borders (Winter 2008) (accessed Apr. 28, 2008)

respondent and court for purposes of most § 2241 habeas petitions. While the Court is not free to decide that the Supreme Court has overruled <u>Braden v. 30th Judicial Circuit Court of Kentucky</u>, and thus the <u>Braden v. 30th Judicial Circuit Court of Kentucky</u> decision remains controlling precedent, the Court believes that the facts in <u>Rumsfeld v. Padilla</u> are closer to those presented here. Unlike <u>Braden v. 30th Judicial Circuit Court of Kentucky</u>, this case does not involve a detainer in another state, but requires the Court to determine whether New Mexico can properly detain Hickam. The Court acknowledges that there is some tension between the language of the two cases, but concludes that the facts and language of <u>Rumsfeld v. Padilla</u> suggest that the Court should narrowly construe <u>Braden v. 30th Judicial Circuit Court of Kentucky</u>

<u>Hickam v. Janecka</u>, No. CIV 06-1132 JBRLP, 2007 WL 2219417, *6 (D.N.M. May 7, 2007). Respectfully, the undersigned does not find the reasoning in <u>Hickam</u> to be persuasive.  The undersigned agrees that the Supreme Court used very sweeping language in <u>Padilla</u>, but the holding was actually quite narrow, and that holding is not inconsistent with the possibility of dual or concurrent jurisdiction in a non-traditional state habeas proceeding for the reasons discussed above.  The <u>Stokes</u> case cited by the New Mexico court concerned the exercise of long arm jurisdiction (the second issue in <u>Padilla</u>) and is therefore not instructive.  <u>Stokes v. United States Parole Commission</u>, 374 F.3d 1235 (D. C. Cir. 2004).  <u>McBee v. Lewis</u>, No. 05-5058, 166 Fed. Appx. 360 (10th Cir. Feb. 6, 2006), the other case cited by the New Mexico court, is indeed a post-<u>Padilla</u> transfer case chronologically speaking, in which the Tenth Circuit found that a § 2241 petition must be brought in the district for the place of confinement.  However, that case never mentioned <u>Padilla</u>, and was in fact a rather routine § 2241 petition brought in the Northern District of Oklahoma by a *federal prisoner* attacking his *federal conviction* in the Northern District of Oklahoma, but confined in a federal correctional facility in Oregon.  The Tenth Circuit simply noted without analysis that the

13

petition, as one brought by a federal prisoner under § 2241, "must be sought in the district where a prisoner is confined at the time of filing the petition rather than in the district where a prisoner is convicted and sentenced," citing pre-<u>Padilla</u> authority. <u>Id.</u> at *2.  The Court also noted, however, that for the petitioner in that case to raise his actual innocence claim, a "motion under § 2255 in the district court for the Northern District of Oklahoma is the exclusive remedy." <u>Id.</u>  <u>McBee</u> would have no doubt been decided exactly the same way pre-<u>Padilla</u>, and is not inconsistent with the recommendation herein.

Accordingly, the undersigned finds that consideration of § 1404(a)'s criteria – convenience of the parties and witnesses, and the interests of justice –  is appropriate. Consideration of that criteria leads to the conclusion that this action should be transferred to the District of Colorado. Though Petitioner himself is physically present in Oklahoma, the petition should not necessarily require an evidentiary hearing. If one were required, <u>Braden</u> teaches that the result should be no different. <u>Braden</u>, 410 U.S. at 494 ("The expense and risk of transporting the petitioner to the Western District of Kentucky, should his presence at a hearing prove necessary, would in all likelihood be outweighed by the difficulties of transporting records and witnesses from Kentucky to the district where petitioner is confined."). Counsel can be appointed for Petitioner, if appropriate, wherever the petition is considered on the merits.  It will be far more convenient for representatives of the Colorado respondents to have this action in Colorado, and federal judges in Colorado are of course much more familiar with questions of Colorado state law. <u>See id.</u> at 499.  Finally, should Petitioner be returned to Colorado, there would be no remaining connection to Oklahoma at

all, rendering the single connection Petitioner has to this forum irrelevant.  Accordingly, although the action is properly brought in either District, it is hereby recommended that the action be transferred to the United States District Court for the District of Colorado.

## **RECOMMENDATION**

For these reasons, it is the recommendation of the undersigned Magistrate Judge that the instant petition be transferred to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1404(a).  Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by May 20, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.  The Clerk of the Court is directed to mail a copy of this Report and Recommendation to Warden Fred Figueroa and the Attorney General of Colorado.

**ENTERED this 30th day of April, 2008.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE